UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **PIERRE PUGH,** | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | JURY DEMANDED |
| | ) | |
| **SCREENING REPORTS INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

### INTRODUCTORY STATEMENT

1. Plaintiff, Pierre Pugh, a very low-income man with a disability, spent over nine years on the Chicago Housing Authority's waiting list. When finally called for an opening, Mr. Pugh was denied the housing, despite being eligible for it, due only to the false report of Defendant, Screening Reports, Inc., claiming Mr. Pugh had been convicted of a felony. Mr. Pugh has never been convicted of a felony. Mr. Pugh therefore brings this action for redress of Defendant's violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

### JURISDICTION

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 because Count I involves a federal question, governed by 15 U.S.C. § 1681. Jurisdiction also arises under 28 U.S.C. § 1337 because the FCRA constitutes an Act of Congress regulating commerce.

### PARTIES

3. Plaintiff, Pierre Pugh, is a very low-income man with a disability living in Chicago, Illinois.

4. Defendant, Screening Reports Inc., is a corporation registered to do business in Illinois. Defendant is regularly engaged in the practice of selling information about potential

residential tenants to landlords and real estate management companies based upon, *inter alia,* court records. At all times relevant to this Complaint, Defendant was a "credit reporting agency" within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

## FACTS

5. In or around January 2005, Mr. Pugh applied for housing from the Chicago Housing Authority ("CHA").

6. CHA is the largest provider of public housing in Illinois, which is a scarce and vitally important public benefit for qualified tenants. CHA residents pay reduced rents limited to approximately 30% of their monthly household incomes.

7. Such tenants also enjoy important procedural protections established by federal law. For example, CHA may terminate a tenant's lease only for a material violation of the lease agreement, creating a measure of shelter security otherwise unavailable to impoverished tenants in Chicago.

8. Tenants of public housing are carefully screened to ensure that they are financially eligible for assistance and do not have a disqualifying criminal history.

9. Because demand for public housing by qualified and needy persons vastly exceeds the supply, CHA places eligible applicants on a waiting list. So many families need public housing that the waiting list closes from time to time, and years may pass before CHA reopens it.

10. At all times relevant to this Complaint, Mr. Pugh was eligible for CHA housing.

11. In response to his application, CHA placed Mr. Pugh on its waiting list.

12. In 2012, CHA notified Mr. Pugh that his name had reached the top of its waiting list.

13. As part of the leasing process, CHA's local management company obtained a

report from Defendant. That report falsely stated that Mr. Pugh had been convicted of a felony, "false swearing," in Georgia in 2001. Mr. Pugh had never been convicted of this or any other felony, in Georgia or any other state.

14. Due solely to Defendant's false report that Mr. Pugh had been convicted of false swearing in Georgia in 2001, CHA and its local management company denied Mr. Pugh an apartment and removed him from the CHA waiting list.

15. As a result, Mr. Pugh lost the apartment for which he had applied, which was rented to another person from the waiting list.

16. Through administrative procedures, Mr. Pugh contested the information contained in Defendant's report and provided Defendant with proof from the State of Georgia that the conviction at issue had not occurred. Defendant then provided a new report to CHA without the false information, which CHA accepted.

17. Because the apartment that had opened up was now occupied, however, CHA placed Mr. Pugh back on its waiting list.

18. In or around August 2014, the Habitat Company, which managed another one of CHA's developments, Dearborn Homes, notified Mr. Pugh that his name had reached the top of CHA's waiting list and that he should come in to be interviewed for an apartment.

19. In or around September 2014, Mr. Pugh went to Habitat Company's office and completed the paperwork necessary to obtain a CHA apartment.

20. As part of that process, the Habitat Company obtained a background report from Defendant.

21. On or around October 1, 2014, Defendant again falsely reported to Habitat Company, *inter alia*, that Mr. Pugh had been convicted of the same felony it had falsely reported

before—"false swearing" in the state of Georgia in 2001.

22. On October 1, 2014, based solely on Defendant's report, CHA and its local management company denied Mr. Pugh an apartment and removed him from the CHA waiting list. A copy of the denial letter is attached as exhibit A.

23. Defendant's report that Mr. Pugh was convicted of a felony in Georgia in 2001 was, again, completely false. Mr. Pugh had never been convicted of any felony, in any state.

24. At the time it provided this report to Habitat Company ("Habitat"), Defendant knew that Mr. Pugh had not been convicted of the listed felony, having already corrected the false report two years before.

25. Despite knowing that Mr. Pugh had not been convicted of "false swearing" in 2001, Defendant again falsely reported the same inaccurate information to CHA.

26. Defendant represents that it "is committed to providing rental applicants and property managers alike accurate information and timely results."

http://www.screeningreports.com/about.cfm.

27. Defendant further represents that "proper resident screening protects everyone in your community. Screening Reports, Inc. provides comprehensive, accurate and cost-effective credit, criminal and eviction background research." http://www.screeningreports.com/index.cfm.

28. Defendant promises to assist management companies, stating that by "using your customized criteria model, each applicant is evaluated and receives a clear recommendation. At the top of the easy-to-read screening report, the Decision Overview shows concisely whether an application meets your standards. With multiple applicants, you'll know how each individual contributes to the application in all areas." http://betternoi.com/screening-reports/

29. Defendant understands that it is subject to the FCRA. Its website contains the following:

> LEARN MORE ABOUT THE FAIR CREDIT REPORTING ACT. The Fair Credit Reporting Act (FCRA) is a U.S. Federal law enacted to ensure the accuracy, fairness and privacy of consumer information reported by consumer reporting agencies. Screening Reports, Inc. complies with the FCRA and takes steps to protect your rights as a consumer. If you would like to learn more about the FCRA, click here for a pdf of the Fair Credit Reporting Act from the Federal Trade Commission Website.

http://www.screeningreports.com/index.cfm

30. The report Defendant provided to CHA was materially inaccurate, incomplete and misleading, because it falsely stated that Mr. Pugh had been convicted of a felony in Georgia when he had never been convicted of any felony in any state.

31. Defendant's knowing false report caused Mr. Pugh considerable damage, resulting in the loss of his priority position on the CHA's waiting list while he challenged the false report through administrative procedures.

32. During that time, Mr. Pugh has lived in substandard housing, suffered eviction, and is now homeless. But for the false report, he would have entered into a lease with Habitat, he would have been spared these effects and protected from unaffordable rent, eviction, and homelessness.

## CLAIM FOR RELIEF

## VIOLATION OF THE FCRA 15 U.S.C. § 1681e(b)

33. Mr. Pugh incorporates and realleges paragraphs 1-32, above, as if fully set forth herein.

34. Defendant's report to CHA was a "consumer report" or a "credit report" as defined by the FCRA. 15 U.S.C. § 1681a(d).

35. 15 U.S.C. § 1861e(b) provides as follows:

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy if the information concerning the individual about whom the report relates.

36. Defendant has lacked and continues to lack reasonable procedures to assure maximum possible accuracy of the information concerning the individual to whom the report relates.

37. Defendant's conduct caused Mr. Pugh severe harm. Defendant's report was the sole reason Habitat decided not to enter into a lease with him.

38. Mr. Pugh has been severely economically harmed, in that he was denied a public housing apartment where his rent would have been limited to approximately 30% of his income, and as a result had to live in substandard, unaffordable housing; was evicted, and suffered homelessness.

39. Given the repeated nature of Defendant's conduct, and its knowledge of its responsibilities under the FCRA, Defendant's failure to comply with §1681e(b) as to Mr. Pugh is intentional and willful, or, at the very least, grossly negligent.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff Pierre Pugh respectfully requests that judgment be entered in his favor and against Defendant for

(a) actual damages;

(b) statutory damages pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o;

(c) punitive damages pursuant to 15 U.S.C. § 1681;

(d) attorney's fees and costs pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o; and

(e) such other and further relief as may be just and proper.

A JURY TRIAL IS DEMANDED.

Respectfully submitted,

\s\ *James A. Brady*
Attorney for Plaintiff

James A. Brady/LAF
120 S. LaSalle St. Suite 900
Chicago, IL 60603
(312) 347-8361
jbrady@lafchicago.org